Council, Mr Davis. Here we go for the 2nd time. Sorry, no worries. When you're ready, excuse me when you're ready. Okay, so for a little clarification, do you want me to go through this yet for the record, you have to say your name again. Okay. My name is Chris Davis and I represent the appellant, but what I want to know is, is your honors. Do you want me to go through this the whole time? On the timeliness issue again, would you rather me just, you know, we've already talked about that or do you want to? Well, I have a couple more questions on timeliness and we'll maybe have one or two more questions that I'll reserve for the next argument where the other side and the next argument has made a slightly different argument. But in this one, I just wanted to pick up on one of the last things you were saying, which is that without the separate document requirement, it's hard to figure out when you have an appealable order denying qualified immunity. And I wasn't quite sure what you meant by that. So can you elaborate on that? Because the thing, like, for example, what I've had, you know, I've had district courts say that, you know, they make these rulings and then in the end they decide to change the ruling. District courts can do that at any time that they want to until there's a final judgment in the appealable. And for example, I'll give you an example of what happens is that lots of times the district court wants us to settle these cases. And they encourage and they order a settlement conference. And they want us to do this because they don't want us to appeal. They want to get rid of this case. They don't want to have it on their back. The thing that I find to be problematic about your argument here is that when I asked earlier about the possible change of policy in your office, your response to that was that you came into the office and determined that some of these cases that had not been appealed did in fact or should in fact be appealed. It's not that you didn't understand that there was an order denying the summary judgment for qualified immunity. You understood that. And so, you know, it's really hard to reconcile these two arguments that you're making because I feel like it's disingenuous for you to say that you didn't understand that there was a final order because in fact you did. It's just that you came into the office and then determined that these cases should in fact be appealed. Your Honor, it's not that I was able to understand. I don't want to say that I didn't understand. I don't think I ever said that. I said that it's a possibility. It's a policy consideration that the courts reason why they haven't amended the rules. Because I'm not the only attorney here. And while I have, you know, I don't know, Judge Rawlinson knows I'm probably a little egoistic, but I think I have a pretty good grasp of the rules. But somebody else may not. And somebody might not have the procedures and know this. And they might not know it's a final decision, even if they're attorneys. And so, which generally I would expect in a qualified immunity appeal that would be. In a preliminary injunction appeal, though, not necessarily so. You have a pro se defendant, right? And he's moved for injunction and he does it. And the rule of injunction, he has no idea that it's a final decision. And so it's a policy issue. It's not. It's not. I don't think you can do that. And like I said, the Supreme Court said this rule has to be mechanically applied. You can't make exceptions and say, hey, geez, he knows this. He knows what's going on. We ought to hold him to a higher standard than the rest of the people. So the court's case, the case that you've referred to a number of times about the mechanical application, that was about whether the document is, in fact, a separate document. When a separate document is required, we mechanically apply the requirement that the document, in fact, be separate, right? I think they say with respect to the rules all along. I mean, this isn't the only case. This is just one of the cases that say it. I think that, for example, the Corrigan case before this court, it dealt with a separate document requirement. It also said that it has to be mechanically applied. And it also, though, said that the appeal was timely. And because, like I said before, they said it because the rules should be interpreted to facilitate the appeals, not to create a loss of appeal. To interpret this rule against the plain language would facilitate the loss of appeal. And I kind of, I know I get your feeling that this somehow is unfair. Hey, you get 180 days to do this. Well, maybe that's somebody's feeling. I don't know. I mean, maybe I'm getting the wrong sense here. But the thing is, it's not. Because this happens at the end of the case, too. For example, okay, you have a summary judgment order at the end of the case, right? And the choice is disposed by summary judgment. I think we would all agree that the time for appeal does not begin to run until, because if the summary judgment disposes all of the issue, it does not begin to run until the separate document is entered. The court does that all the time. The court says there has to be a separate document at the end of the case and an ocean for summary judgment. But how is that any different from here? In fact, it's less certain here because in that case you have disposed of all parties and all issues. I think the difference is that in the summary judgment context at the very end of the case, the rule allows for this additional time and requires the separate document because there are post-judgment motions that need to be filed that the court is accounting for. Here, there's actually a potential for delay in the case, and it really does impact the efficiency of the court and sort of the administration of justice when an office like yours waits up to 150 days to file an appeal in a matter that would otherwise go up to the court, get resolved, so that the court then can continue to adjudicate the case before it. So I think it's just a completely different context, that the post-judgment motions that apply at the end of a case just don't exist in a collateral order circumstance. Your Honor, I respectfully disagree because you say there's other motions. Well, guess what? In an interlocutory appeal, there's all kinds of motions. There's a lot more motions that go in between an interlocutory appeal in the end and between the end. What other motions are you filing with the district court after you get a denial of the… I could do the same kind of motion. I could do a motion for reconsideration, Your Honor. I could do all the same kind of motions at the end of an interlocutory appeal that you can do at the end of a case. But guess what? In the judgment, when they do it, the district court has decided that when it hits that, at least in Nevada, they almost immediately file the judgment. They don't wait for additional order. As soon as the summary judgment order is issued, they issue a final judgment. They could do the same thing here if they wanted to cut off the time for appeal. And not only that, if opposing counsel wanted to cut off time for appeal, they could ask the district court to enter judgment. And then it would cut off the time for appeal. It's a simple thing to do if they wanted to cut off the time for appeal. But they don't. And, Your Honor, I would respectfully also that, like, in each case, we, for example, here, we are not untimely. We don't have – we only still have 70 days to file our notice of appeal. It's just that judgment is not entered until 150 days is allowed when there's no separate document. So if – I mean, if you're right that judgment as used in the rules is just – it includes not just final judgments but anything that you can appeal from, what about – I mean, your friend on the other side made the point that FRAP 4 seems to have some unnecessary language on your reading in that it says judgment or order. Well, like I said, Your Honor, it does say judgment or order, right? But I delineated. There are certain orders that are final without it. Rule 60B order, for example, expressly exempts. This is Rule 60B order. And like I said, Your Honor, they could have put another subdivision – I don't know what it got to. I mean, subdivision D, E, F, whatever subdivision they were up to. They could have just added another one and said – they could have just put in and said interlocutory order denying qualified immunity. Interlocutory order denying preliminary injunction. They could have added that. But they didn't do it. And I think the reason why is, is there was probably – I can only speculate, but there was probably some conflict on the – within the Supreme Court about whether they wanted to do that or not. And so they didn't do it. And then when the people wrote the advisory committee notes who aren't the Supreme Court justices – maybe I'm understanding this wrong, but I think it's the Supreme Court justices that have to approve the changes in the federal rules. And the people who write the advisory committee notes, they probably didn't like what the Supreme Court did. So they put the notes away. But the thing is, is that this court, just like the case in court, you can't disregard the plain language of the rule based on the notes. The notes do not control here. The Supreme Court ruling that this should be mechanically applied applies here. Your Honor, I just want to get to qualified immunity, I guess, before – well, actually, I'll reserve my time if that's okay. Thank you, counsel. Thanks. Good morning, Your Honors. My name is Christina Phipps of Lago Marcino Law, and I represent the appellee, Daunte Patterson. I want to just start by recognizing the fact that we did not raise the timeliness issue in our answering brief. Unfortunately, we just missed that initial order from 2023 when we came in as pro se counsel – I'm sorry, as pro bono counsel. So, of course, when the more recent December 2024 order came out, recognizing that fact and advising that we discuss with the related cases, your counsel, for the related cases, we did that. I have reviewed their briefs. I am familiar with the arguments. And then, of course, with the appellant's reply brief that was filed in February, they provided much more of that argument there. So, I'm happy to discuss that issue if you'd like me to, but I didn't want to raise it if you didn't want me to discuss it since we didn't raise it in our brief. But, I mean, it is jurisdictional, right? Correct. Right. So, you haven't waived it. Okay. Yeah. And they do state that we waived it, but, of course, we didn't expressly mention it at all in our briefing. Even if you had tried to waive it, you can't waive appellate jurisdiction. Okay, great. So, 88 days did pass. It wasn't quite as egregious as the 150-day issue in one of the related cases. But, in that instance, you know, I do think that many of the arguments that were made by the McNeil case and the Naughton case seem to apply here. There is ambiguity, I admit. It's not super clear in terms of the textual analysis, but in the sense of what the practice has been in the district courts, clearly there isn't a practice that they're filing these separate documents, especially for motion of summary judgment orders where these collateral orders are appealed from. So, in that sense, I do think that it indicates that the reading that the appellants are bringing is incorrect. I also think that a lot of the practical issues that some of the other cases brought in is, you know, the confusion, the prejudicial delay, especially when we're looking at motion for summary judgment. If you're talking about 180 days after an order that an appeal can be made, you're typically in the process of filing motions in limine. You're already in trial preparation. Judges have already potentially scheduled your trial out. So, I think in a practical sense, the rule doesn't make sense. It's just duplicitous. It's unnecessary paper pushing, as I think one of the other counsel, the argument that they made. So, in that sense, we do agree, and our position is that the court should adopt the statutory interpretation argument that was made by Naughton and the McNeil cases and then just provide clear instruction that the separate document is only necessary when there's actually a final judgment or a final order in the sense that the case is over and that the appeal can be brought from there. The bulk of our argument, of course, was for the qualified immunity issue, which is also a jurisdictional argument, where we raise the fact that while the appellants are trying to bring in an argument that they have a right to appeal under the collateral order doctrine, in reality, when you look at the underlying order, the order was all about their inability to meet their burden as the moving party to demonstrate that there were no material issues of fact. And so they can't now couch or conflate the two and try to get this court to basically start from scratch and do a review of the record on evidentiary sufficiency. And there is clear precedent in that sense in this court from Johnson and Plumhoff, Anderson, I think it's Foster, and Behrens, which in the reply they state that we didn't address, but all of these cases stem from the Johnson case, which we do discuss in our answering brief. So for that, so for Johnson, the defendants moved for summary judgment on the basis that there was no evidence that they were present at the time of the alleged constitutional violation and that they had nothing to do with it. Similarly, here, the defendants are arguing that they're entitled to summary judgment because there's no evidence that they personally participated in the constitutional violation that Pattison alleges. So as discussed by the district court, they failed to make the argument that there is an absence of a genuine issue of material fact as to whether they were deliberately indifferent to Pattison's serious medical need. They simply claimed without more that there is uncontroverted evidence that Pattison received treatment, pointing only to documents indicating that he had a dozen or so appointments, but don't discuss any actual treatment that he received. And so the constitutional violation here is premised from the deny, the delay, and the intentional interference that the defendants caused violating his constitutional right, not that there's a difference in medical judgment, as the appellants have continued to argue. Johnson also explains that a claim of immunity of suit is conceptually distinct from the merits of a claim that the plaintiff's rights have been violated. Johnson sides to a prior case, Elliott v. Thomas, which puts it more simply, explaining that whether the defendants did the deeds alleged is precisely the question for trial. And again, that's what the appellants are arguing here. They're saying they're entitled to qualified immunity because there's no evidence that they did the deeds alleged. But again, that's a conflation of the evidentiary sufficiency argument that they're trying to pose as a qualified immunity argument. They're saying that they're entitled to qualified immunity because the plaintiff or the appellee, Patterson, can't meet the elements of the Eighth Amendment claim. Not because there was a determination of uncontested facts, and on that basis, there was some clearly established law or lack of clearly established law that needs to be assessed. So as in Johnson, again, the defendants are claiming they're entitled to qualified immunity. But based entirely on the argument, there aren't sufficient facts in the record demonstrating that they personally participated or were deliberately indifferent to Patterson's serious dental needs. And again, this is a merits question. However, I will say if the court does choose to engage in a wholesale review of the record, you will find that there is evidence of their personal participation. So, for example, the court, when the lower court, the appellees brought up the fact that there's dental charts that show that appointments occurred. And what the court pointed out, the magistrate judge and his report and recommendation, and then Judge Due, is that the fact that he had appointments doesn't indicate that there was treatment. There's no discussion or identification of actual treatment. And when you take that in conjunction with the fact that there's kites over the course of years, where Patterson continuously complains about lack of treatment, that he's told Sullivan and Vargas, at least, before Benson comes into the picture, that he needs help, that they're ignoring him, that he's in pain, that he has nausea. Those things together indicate that he was not, in fact, getting treatment. And a reasonable jury could rely on that to show that there was knowledge that they were ignoring him, that they were intentionally denying and delaying the treatment. As for Benson, a little more complicated. He was originally listed as John Doe Dentist when the complaint was filed. Patterson later recognized his true name, Keith Benson, substituted him out. And when you look back into the December 2019 grievances that he filed, he actually discusses events that occurred, discussions that he had with Vargas as well as Benson, who, again, he just says is the new male dentist, but it's the John Doe, about how he was appalled at the lack of treatment that he was receiving, you know, under Peterson's tenure. And then when you look at those same dental charts that the appellants brought up, it shows that there was still, despite in December 2019, Benson being aware of this, that he doesn't have an appointment with Benson until, I believe it's October of 2020, showing that despite, again, allegedly knowing and having this conversation about the lack of treatment, that he still wasn't seen for some time. And even then, it doesn't indicate that actual treatment was received to resolve the problems that he was experiencing. And I'll get those numbers for you. So the grievance where he discusses these events, that's ER 483. That's where he talks about Ginny Vargas, you know, having a conversation with her. And then, again, the new male dentist, which was substituted, and is Keith Benson later having knowledge. And again, that's signed as December of 2019. There is a kite, which we cite in our incident brief, ER 269. That is where he identifies Peterson, who is still in the picture at this time, and then Vargas and Sullivan, knowing about his need for treatment, not providing him with treatment. All right, counsel, thank you. You've exceeded your time. We thank you for taking this case pro bono, and we belatedly thank prior counsel and the prior case for taking this case pro bono. Thank you very much. Thank you. Your bottle. Thank you, Your Honors. In Howard, this court recently clarified that notwithstanding the rule of sufficiency of the evidence on interlocutory appeals, this court has jurisdiction when plaintiff's claims are premised on bare allegations without evidence. To prove an Eighth Amendment violation, Patterson must establish that each individual defendant participated in Patterson's dental care at issue in his complaint, and knowingly disregard an excessive risk to Patterson's health, which is not possible, because Patterson does not point to any evidence of record that any defendant had any involvement in his dental care prior to submitting his complaint in May 14, 2020. So with no evidence in the record, it can't be possibly deliberate. The only person identified as having any involvement in Patterson's dental care prior to May 14, 2020, is Dr. Peterson, who unfortunately passed away and was dismissed from the case. Finally, defendants are entitled to qualified immunity because they did not violate any clearly established law. Defendants have not pointed to any authority where a prison official violated the Eighth Amendment when an inmate fails to provide any evidence that an official was personally participating in an inmate's dental care. To the contrary, Peralta rejected all those claims. Patterson also failed to point to any authority where deliberate indifference was found though an inmate was provided extensive treatment over the course of a period of years when an expert has not opined that the treatment provided was medically unacceptable under the circumstances. Accordingly, defendants are entitled to qualified immunity, and this Court should therefore reverse the District Court order denying defendants' motion for summary judgment. Thank you, Your Honor. Thank you. Thank you both, Counsel. The case is argued and submitted for decision by the Court.
judges: RAWLINSON, MILLER, DESAI